**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: December 13 2016

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 15-32754 |
| | ) | |
| Francis R. Brace, | ) | Chapter 7 |
| | ) | |
| Debtor(s). | ) | Adv. Pro. No. 15-03136 |
| | ) | |
| Todd Gene Brace, | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Francis R. Brace, | ) | |
| | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This cause comes before the court on the Motion for Summary Judgment filed by Plaintiff Todd Gene Brace [Doc. #34], and Motion for Summary Judgment filed by Defendant Francis R. Brace [Doc. #37]. Defendant Francis R. Brace filed a Response to Motion for Summary Judgment [Doc. #38].

The Complaint seeks to hold two separate debts non-dischargeable under either 11 U.S.C. §523(a)(5) or §523(a)(15).

The first debt is a judgment from the Perrysburg Municipal Court ("Muncipal Court Judgment") based upon Defendant's failure to vacate property located on East Front Street in Perrysburg, Ohio. [Doc. #34-3, pp. 4-8; Doc. #35, pp. 4-8; Doc. #37-3]. The amount of the Municipal Court Judgment was for $5,952.92, including $3,600 for unpaid rent, $1,287 for late fees, $1,000 for failure to give notice of intent for a second term, and $65.92 for property damage to a garage door caused by the parties' child. [Id.]. The award for unpaid rent specifically referenced Defendant-Debtor's failure to pay into a health savings account for the benefit of the minor children as required by paragraph 3 of the Final Judgment Entry of Divorce by Consent. [Doc. #34-3, p. 5; Doc. #35, p. 5; Doc. #37-3, p. 2].

The Municipal Court Judgment for damages arose from a lease agreement that was entered into as a condition of the Final Judgment Entry of Divorce by Consent entered by the Wood County Common Pleas Court ("Final Decree") on or about June 30, 2010 and journalized on July 7, 2010. [Doc. #34-2, p. 10, ¶14; Doc. #35, Ex. C, p. 55, ¶14; Doc. #37-7, p. 10, ¶14]. Defendant-Debtor had been living at a residence on Riverford Drive, that was awarded to Plaintiff. The Final Decree also awarded the property on 332 East Front Street to Plaintiff, Todd Gene Brace, subject only to the requirements associated with a one year lease, and a requirement that he sell the property if certain conditions were not met. [Doc. #34-2, p. 9, ¶19; Doc. #35, Ex. C, p. 54, ¶13; Doc. #37-7, p. 9, ¶13]. Defendant-Debtor subsequently moved to 332 East Front Street, and lived there pursuant to the lease agreement.

The second debt asserted by Plaintiff is for costs totaling $1,850.03 for unpaid bills that the Plaintiff claims that Defendant-Debtor owes for utilities. The Complaint, in paragraphs 8 and 9, states that:

> [I]n violation of the terms of the Final Decree and the lease as set forth above, the Defendant herein resided at the 332 East Front Street, Perrysburg, Ohio residence until September 1, 2011, rent free and without payment of the utilities for the residence; though the Plaintiff was obligated to pay the child support of $1,000.00 per month for the same period.
>
> As a result, the Defendant owes the Plaintiff the sum of $5,952.92, as and for unpaid rent and the sum of $1,850.03 for unpaid utilities, a total of $7,802.95. ("the Claim").

[Doc. #1, p. 3].

The "$5,952.92" is the amount of the Perrrysburg Municipal Court Judgment, discussed above. The amount for "unpaid utilities" in the amount of $1,850.03 is an additional claim, for which there is, at present, no judgment entered.

In response to the allegations regarding the "unpaid utilities", the Answer states: "Debtor denies paragraph 8 and 9 as Defendant asserts she was never paid child support from April 11, 2011 until September 1, 2011." [Doc. #11, p. 1].

In his Motion for Summary Judgment, Plaintiff asserts: "as is set forth in the affidavit of Todd Brace, attached hereto as Exhibit C, the Plaintiff also incurred additional costs with respect to the time the Defendant occupied the Residence[1]. These costs total $1,850.03, but were not known to the Plaintiff at the time he presented evidence in the Perrysburg Case." [Doc. #34, p. 4].

In contrast, paragraph 2 of the Affidavit of Todd Brace states: "Attached hereto are accurate copies of the utility bills in the amount of $1,850.03 that were incurred while Francis Brace resided at the property located at 26868 Riverford Drive, Perrysburg, Ohio and which she did not pay after she vacated the premises on April 10, 2010, and for which I was obligated to pay as they were

---

[1]/ "Residence" is a defined term in Plaintiff's Motion for Summary Judgment, referring to 332 East Front Street. [Doc. #4, p. 2].

associated with the premises." [Doc. #34-3, p. 2]. The Affidavit continues: "3. I did not present these bills at the hearing conducted in the proceedings in the Perrysburg Municipal Court as I was not aware that they had not been paid by Francis Brace and was not aware that they remained unpaid at the time of the hearing." [*Id*.].

Attached to the Affidavit are two Exhibits, an unmarked Exhibit and Exhibit B. These Exhibits reflect the unpaid bills for electric ($539.04), water ($457.48) and gas ($853.51), totaling $1,850.03 for 26868 Riverford Drive.

Notably, the bills are in the name of Todd Brace. They include a water and sewer bill with a billing date of "07-01-2010", that states "Final Re-billing". [Doc. #34-3, p. 7]. A print out of the Waterville Gas and Oil company usage data starts on January, 2008 and stops with a September, 2011 amount owed. [Doc. #34-3, p. 8]. The print out of the statement for electricity from First Energy reflected late charges for March, April and May of 2010, and no payment amounts were listed for those obligations. [Doc. #34-3, p. 9].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986).

The party moving for summary judgment always bears the initial responsibility of informing

the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.* "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman v. Rieger,* 150 F.3d 561, 566 (6th Cir. 1998).

Where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999).

The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate. "When parties file cross-motions for summary judgment, 'the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Parks v. LaFace Records*, 329 F.3d 437, 444-445 (6th Cir. 2003)(*quoting, B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001)); 10A Charles Alan Wright, Arthur R.

5

Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* §2720 (1998).

**II. The Obligations In Issue.**

While Plaintiff invites the court to find that all, or part, of the obligations in issue are non-dischargable under 11 U.S.C. §523(a)(5), it appears that the broader provisions of 11 U.S.C. §523(a)(15) are more applicable to most of the obligations in issue.

Under §523(a)(15) a debt is nondischargeable if three elements exist: 1) the debt in question is to a spouse, former spouse, or child of the debtor; 2) the debt is not a support obligation of the type described in §523(a)(5); and 3) the obligation was incurred in the course of, or in connection with, a separation agreement, divorce decree or other order of a court of record. *See*, *Damschroeder v. Williams (In re Williams)*, 398 B.R. 464, 468 (Bankr. N.D. Ohio 2008); *see also*, *In re Schweitzer*, 370 B.R. 145, 150 (Bankr. S.D. Ohio 2007).

Subsections 523(a)(5) and (15) generally concern the dischargeability of debts to spouses, former spouses and children of a debtor, or obligations to third parties that benefit them. On the whole, these types of debts have "traditionally [been] accorded favorable treatment in bankruptcy." *Damschroeder v. Williams (In re Williams)*, 398 B.R. 464, 469 (Bankr. N.D. Ohio 2008). "Both the legislative history of the Bankruptcy Code amendments and case law referring to this section illustrate that §523(a)(15) is broadly and liberally construed to encourage payment of familial obligations rather than to give a debtor a fresh financial start." *Reynolds v. Reynolds (In re Reynolds)*, 546 B.R. 232, 236-237 (Bankr. M.D. Fla. 2016)(footnotes omitted). Courts have interpreted §523(a)(15) more liberally than other provisions of §523(a) because: 1) the plain

language used in the statute supports a broad interpretation[2]; 2) the fact that one of the overarching themes of Congress in enacting BAPCPA was to redefine and reinforce the ability of non-debtor spouses to recover property settlement obligations from debtors in bankruptcy[3]; and 3) the history of the legislation, from its original enactment in 1994 through the amendments expanding the protections of its provisions in 2005, supports an expansive reading of the statute.[4]

### A.    The State Court Judgment.

The parties litigated the issues regarding damages for holding over (and failing to pay or provide notice) before the Perrysburg Municipal Court.  The decision of the Municipal Court was a "judgment on the merits", entered after the court took evidence.  It is not a default judgment, nor was it entered on technical or procedural grounds.  No timely appeal was filed.  Thus, the state court judgment is binding on this court under several fundamental legal doctrines.

Pursuant to 28 U.S.C, §1738, federal courts must give "full faith and credit" to a state court judgment, meaning it is to be given the same preclusive effect that would be given the judgment under the laws of the state in which it was rendered. *See*, *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877, 884 (1986); *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 703 (6th Cir. 1999). "When a federal court is asked to give preclusive effect to a state

---

[2]/ *See*, *Taylor v. Taylor (In re Taylor)*, 478 B.R. 419, 426-427 (10th Cir. BAP 2012)(argument to limit protections of §523(a)(15) to dependent spouses and children "ignores the plain language of the statute."); *Quarterman v. Quarterman (In re Quarterman)*, 2012 WL 4965159 at *4, 2012 Bankr. LEXIS 4924 at *9 (Bankr. D. Ariz. Oct. 17, 2012)("[T]he Court must consider the broad language used in §523(a)(15).").

[3]/ *See e.g.*, *Wodark v. Wodark (In re Wodark)*, 425 B.R. 834, 838 (10th Cir. BAP 2010); *Reynolds v. Reynolds (In re Reynolds)*, 546 B.R. 232, 236 n.18 (Bankr. M.D. Fla. 2016)("Section 215(3) amends section 523(a)(15) to provide that obligations to a spouse, former spouse, or a child of the debtor (not otherwise described in section 523(a)(5)) incurred in connection with a divorce or separation or related action are nondischargeable irrespective of the debtor's inability to pay such debts." H.R. Rep. No. 109-31, at 61 (2005).).

[4]/ *See*, *Adam v. Dobin (In re Adam)*, 2015 WL 1530086 at **4-6, 2015 Bankr. LEXIS 1147 at **11-17 (9th Cir. BAP 2015)(detailing the amendments made to §523(a)(15) and §523(c)).

court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether and to what extent the prior judgment should be given preclusive effect in a federal action." *Fordu*, at 703 (citations omitted).

*Res judicata*, commonly referred to as claim preclusion,[5] prescribes that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414, 66 L.Ed.2d 308, 313 (1980). Similarly, the Ohio Supreme Court has stated that "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226, 229 (1995), *quoting*, 1 Restatement of the Law 2d, Judgments (1982). Sections 24-25.

The doctrine of *res judicata* applies when four elements are shown: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Portage Cty. Bd. Of Commrs. v. Akron*, 109 Ohio St.3d 106, 123, 846 N.E.2d 478, 495 (2006); *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir. 1997), *cert. denied*, 523 U.S. 1046, 118 S.Ct. 1361, 140 L.Ed.2d 511 (1998).

Thus, as *Grava* states in the syllabus: "A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226

---

[5]/ Historically, Ohio courts have also referred to *res judicata* as "estoppel by judgment". *See*, *Brooks v. Kelly*, 144 Ohio St.3d 322, 323, 43 N.E.3d 385, 386 (2015).

8

(1995); *Portage Cty. Bd. Of Commrs. v. Akron*, 109 Ohio St.3d 106, 122-123, 846 N.E.2d 478, 494-495 (2006). In addition, "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in the first lawsuit." *Rogers v. City of Whitehall*, 25 Ohio St. 3d 67, 69, 494 N.E.2d 1387, 1388 (1986); *Holzemer v. Urbanski*, 86 Ohio St.3d 129, 133, 712 N.E.2d 713, 716 (1999).

While the Supreme Court has held that *res judicata* does not prevent the bankruptcy court from determining the dischargeability of the obligation,[6] liability on the judgment debt and the amount awarded may not be collaterally attacked. *See*, *Wilmer v. Yeager (In re Yeager)*, 500 B.R. 547, 555 (Bankr. S.D. Ohio 2013), *aff'd*, *Yeager v. Wilmers*, 553 B.R. 102 (S.D. Ohio 2015); *Chandler v. Alexakis (In re Alexakis)*, 2012 WL 10716047 at *6, 2012 Bankr. LEXIS 4164 at *21 (Bankr. S.D. Ohio Sept. 6, 2012)("this court cannot revisit the Debtor's liability for the judgment debt nor the amount of damages awarded to the Chandlers by the state court as those matters have been conclusively determined in the State Court Judgment."); *Sliva v. May (In re May)*, 321 B.R. 462, 466 (Bankr. N.D. Ohio 2004).

Another reason that defendant cannot collaterally attack her liability on the judgment and the amount awarded by the state court is the *Rooker-Feldman* Doctrine. The *Rooker-Feldman* Doctrine bars the exercise of federal court jurisdiction "over claims that effectively challenge state court judgments." The only federal court that can provide appellate review is the United States Supreme Court, after a determination by the state's highest court. *See*, 28 U.S.C. §1257; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). Thus, lower federal courts are precluded from conducting such review. *Lawrence v. Welch*,

---

[6]/ *Brown v. Felsen*, 442 U.S. 127, 139, 99 S. Ct. 2205, 60 L. Ed. 2d 767 (1979).

9

531 F.3d 364, 368 (6th Cir. 2008). Thus, this court cannot be used as a substitute for an appeal that was never taken from the Municipal Court Judgment. Arguments, such as Defendant's assertion that the Perrysburg Municipal Court somehow lacked jurisdiction to issue the Judgment, are barred by *Rooker-Feldman*.[7]

As previously noted, the underlying Judgment was entered after the Perrysburg Municipal Court took evidence. It is not a default judgment. Thus, the facts found by the state court in its Judgment are binding on this court based upon principles of collateral estoppel, also known as issue preclusion. A party is precluded from re-litigating issues of fact or law "actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990). Specifically, the dollar amounts assigned to each cause of action are findings that this court must recognize, whether under claim preclusion or issue preclusion.

While the state court Judgment, as well as the Municipal Court's factual findings, are binding, the issue of whether or not the obligations are non-dischargeable under Sections 523(a)(5) and (a)(15) are issues for this court to decide.[8] In considering whether or not these debts are

---

[7]/ In addition, as a federal court of limited jurisdiction, this court cannot sit as a domestic relations court, determining what effect, if any, should be given to Defendant's assertions that she was not paid child support that she was owed by Plaintiff. Those are issues for the state domestic relations court to determine. Additionally, it should be noted that this decision is not determining what obligations, if any, Plaintiff owes to Defendant.

[8]/ Courts have construed Section 523(c) as granting bankruptcy courts and state courts concurrent jurisdiction over issues of dischargeabililty under Section 523(a)(5). *See*, *Dodge v. LaCasse (In re LaCasse)*, 238 B.R. 351, 354 (Bankr. W.D. Mich. 1999)("In §523(a)(5) matters the bankruptcy court has concurrent jurisdiction with state courts."); *Hohenberg v. Hohenberg (In re Hohenberg)*, 143 B.R. 480, 483 (Bankr. W.D. Tenn. 1992)(a state court has concurrent jurisdiction with bankruptcy courts to determine whether a debt is nondischargeable under §523(a)(5) as support). After the BAPCPA Amendments to the Bankruptcy Code, which removed §523(a)(15) from §523(c), bankruptcy courts and state courts have concurrent jurisdiction over dischargeability determinations made under §523(a)(15). *Lewis v. Lewis (In re*

10

dischargeable, the Sixth Circuit Court of Appeals has held that the language, findings and orders contained in the Final Decree are entitled to deference on different principles than those previously discussed. *See*, *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 403 (6th Cir. 1998)(deference bankruptcy courts owe state divorce courts is not based upon *res judicata* principles).

The *Sorah* decision looked at whether or not the debtor's obligation met three traditional state law indicia of support: 1) the obligation was identified in the divorce decree or the parties' agreement as alimony, maintenance, or support; 2) the obligation was payable directly to the ex-spouse creditor; and 3) the obligation ceased on such events as the ex-spouse creditor's death, remarriage, or eligibility for Social Security benefits. The Sixth Circuit held that the these three traditional indicia of support created a presumption in favor of the ex-spouse creditor. *Sorah*, 163 F.3d at 401-402.

### B. The Amounts Awarded For Hold Over Damages.

The Municipal Court Judgment reflects that the parties entered into a residential lease that states that it is "being executed as part and parcel of a Divorce Agreement entered into by the parties." [Doc. #37-2, pp. 1-2]. The Final Decree set forth an obligation of Defendant-Debtor to pay rent of $1,200 per month for one year, which was to be set off against the child support obligation of $1,000 a month [Doc. #35, p. 51, ¶9]. If the issue were that came rent due during the one year lease period, the obligation would appear to meet the first part of the *Sorah* test, requiring that the obligation be "identified in the divorce decree." Rent was payable by Defendant-Debtor to the Plaintiff ex-spouse, which would meet the second element. And, the obligation ceased at a specified time - running from April 12, 2010 to April 11, 2011 [Doc. #35, p.54, ¶14], meeting the third

---

*Lewis)*, 423 B.R. 742, 755 (Bankr. W.D. Mich. 2010). The dischargeability issues were first raised in this court, and neither party has requested anything other than a ruling, by this court, in their favor.

11

element, if the time period specified in the Final Decree had not lapsed.

However, in this case, the rent obligation of $3,600 was not for rent during the one year period provided for in the Final Decree. Instead, it was an obligation for rent that accrued after the one year period provided for in the Final Decree had ended. Thus, viewing the facts in the light most favorable to the non-moving party, the rent obligation of $3,600 will not be found non-dischargeable under §523(a)(5).

Instead, the court finds that the Municipal Court Judgment is largely non-dischargeable under §523(a)(15), including the rent obligation for $3,600  The obligation to enter into the lease agreement was created by the Final Decree. The Plaintiff essentially argues that "but for" the Final Decree, there would not have been a lease agreement, and therefore the obligation is non-dischargeable under §523(a)(15). While the scope of subsection (a)(15) is broad, Plaintiff's concept seems to go beyond the plain language of the statute. To be non-dischargeable under Section 523(a)(15), the obligation has to be "in connection with" (in this case) the "divorce decree" - *i.e.*, the Final Decree. Here, there are two ways in which most of the obligations in the Judgment are connected to the Final Decree.

The requirement in the Final Decree that the parties enter into a lease agreement is one way in which the damages in this case were "incurred . . . in connection with a . . . divorce decree." In addition to the one year lease of 332 East Front Street, which the parties were required (by their own agreement) to enter into, the Final Decree also provided that Plaintiff was awarded possession of the property, subject only to the one year lease. [Doc. #35, p.53, ¶13]. The majority of the damages arose from the failure to comply with the Final Decree's award of possession of the property to

Plaintiff after the expiration of the one year lease.[9]  In combination, these two violations - the obligation to enter into a lease with certain terms, together with damages that resulted from a failure to turn over possession of the property after the expiration of the lease - are sufficient to hold the following portions of the Municipal Court Judgment non-dischargeable pursuant to §523(a)(15): 1) the $3,600 for unpaid rent; 2) $1,287 for late fees; and, 3) $1,000 for failure to give notice of intent for a second term.

The Municipal Court Judgment also included an award of $65.92 for property damages to a garage door caused by the parties' child.  Viewed in the light most favorable to the non-moving party, this debt may not be one "owed by Defendant to Plaintiff arising from their prior status as spouses." *Tracy v. Tracy (In re Tracy)*, 2007 WL 420252 at *3, 2007 Bankr. LEXIS 360 at *8 (Bankr. D. Idaho Feb. 2, 2007).  The award does not appear to be based upon the requirements of the Final Decree in the same way as the other damages awarded in the Judgment.  If liability for the damage to the garage door was premised on the lease agreement[10], it would appear to be a term that was not required by the Final Decree, and was not necessarily based upon a violation of the obligation to turn over the property on April 11, 2011.  [Doc. #35, p.54, ¶14].  Because this matter is on Summary Judgment, and the court is required to view the facts in the light most favorable to the nonmoving party, the obligation for garage door damage may be too remote from the obligations imposed by the Final Decree to be non-dischargeable as being "in connection with" the Final Decree.  Accordingly, the $65.92 attributable to damage to the garage door by one of the Parties'

---

[9]/ The Municipal Court Judgment also references arguments made by the parties under the Final Decree for child support and health savings account contribution obligations. [Doc. #34-3, pp. 4, 6; Doc. #35, pp. 4, 6; Doc. #37-3, pp. 1, 3].

[10]/ The lease agreement contained a "Property Maintenance" clause. [Doc. #35, pp. 121-123].

13

children is not excepted from discharge by this Order.

Defendant argues that the fact that the Municipal Court Judgment was entered by a non-domestic relations state court means that the Judgment cannot be held non-dischargeable under §523(a)(15). This argument has been rejected by other courts. For example, in *Quarterman*, the bankruptcy court cited the broad language of §523(a)(15)[11] in rejecting arguments that the fact that an arbitration award entered in a separate civil case prevented the divorce related obligation from being held non-dischargeable. *See*, *Quarterman v. Quarterman (In re Quarterman)*, 2012 WL 4965159, 2012 Bankr. LEXIS 4924 (Bankr. D. Ariz. Oct. 17, 2012). "A state court judgment to enforce a debt arising from a divorce decree is surely a debt 'in connection with' a divorce decree. Such a reading would also be consistent with the legislative purpose of §523(a)(15)." *Quarterman*, 2012 WL 4965159 at *4, 2012 Bankr. LEXIS 4924 at *10.

Accordingly, for all of the reasons stated above, the court finds $5,887 of the Municipal Court Judgment to be non-dischargeable under §523(a)(15).

### C. The Utility Bills.

The Complaint states: "Thereafter, in violation of the terms of the Final Decree and the lease as set forth above, the Defendant herein resided at the 332 East Front Street, Perrysburg, Ohio residence until September 1, 2011, rent free and without payment of the utilities for the residence; though the Plaintiff was obligated to pay the child support of $1,000.00 per month for the same period." [Doc. #1, p. 3, ¶8]. Thus, the Complaint appears to assert a claim for non-payment of utilities for the period from April 11, 2011 to September 1, 2011.

---

[11]/ "This Section excepts certain debts from discharge 'incurred by the debtor in the course of a divorce or separation or *in connection with* a separation agreement, divorce decree *or other order of a court of record*.' (Emphasis added)."

14

Similarly, in Plaintiff Todd Brace's Motion for Summary Judgment, the term "Residence" is a defined term[12], meaning 332 East Front Street, Perrysburg, Ohio. [Doc. #34, p. 2]. Later, Plaintiff's Motion for Summary Judgment states: "In addition, as is set forth in the affidavit of Todd Brace, attached hereto as Exhibit C, the Plaintiff also incurred additional costs with respect to the time the Defendant occupied the Residence. These costs total $1,850.03, but were not known to the Plaintiff at the time he presented evidence in the Perrysburg Case." [Doc. #34, p. 4].

However, a review of the Affidavit of Todd Brace [Doc. #34-3, p. 2] reflects a different basis for the claim:

> 2. Attached hereto are true and accurate copies of the utility bills in the amount of $1,850.03 that were incurred while Francis Brace resided at the property located at 26868 Riverford Drive, Perrysburg, Ohio and which she did not pay after she vacated the premises on April 10, 2010 and for which I was obligated to pay as they were associated with the premises.

The exhibits attached to the Affidavit reflect a service address of 26868 Riverford Dr. in Perrysburg. [Doc. #34-3, pp. 5-8].

There is over a year's difference in the time period during which the utility bills were incurred between the Complaint and the Motion for Summary Judgment and the Affidavit of Todd Brace. Moreover, the location where the utility bills were alleged to have been incurred are different - Riverford Drive vs. East Front Street.

Summary Judgment is appropriate where there is an "absence of a genuine issue of material fact". Here, the internal inconsistencies in Plaintiff's pleadings prevent the court from finding an absence of issues of fact. The Complaint does not allege a basis for the claim that matches the

---

[12]/ "Among other issues, such as allocating child support obligations, the Final Decree addressed the Parties' former marital residence located at 332 East Front Street, Perrysburg, Ohio. ('Residence')."

Affidavit intended to provide evidentiary support. "Because this matter is before the Court on motion for summary judgment, [the movant] does not win in the face of ambiguity." *Smith v. Werner Enterprises, Inc.*, 65 F.Supp.3d 1305, 1312 (S.D. Ala. 2014).

Plaintiff's Affidavit attempts to sidestep another problem that prevents this court from granting Summary Judgment on the utility bills - the issue of *res judicata*. In paragraph 3, the Affidavit of Todd Brace states: "I did not present these bills at the hearing conducted in the proceedings in the Perrysburg Municipal Court as I was not aware that they had not been paid by Francis Brace and was not aware they remained unpaid at the time of the hearing."

If, as it appears from the various bills attached to the Affidavit, the utilities bills in issue were incurred on or about January through early April of 2010, that is approximately 14 month before the filing of the lawsuit in Perrysburg Municipal Court on June 6, 2011. [Doc. #34-2, p. 2]. Moreover, the utility bills submitted by Plaintiff reflect that they were addressed to Todd G. Brace, at the Riverford Dr. address that Plaintiff appears to have taken possession of by mid-April of 2010.

The Toledo Edison electric bill appears to run through May 23, 2010, and it shows unpaid bills through April 10, 2010. [Doc. #34-3, p. 5]. The bills for water charges reflect billing dates and due dates for April 1st and 15th of 2010 with the notion "Re-billing" [Doc. #34-3, p. 5], and a "Final Re-billing" with a billing date of July 1, 2010, and a due date of July 15, 2010 [Doc. #34-3, p. 6-7]. The water bills were sent to Todd Brace at an address in Wheeling, West Virginia. A First Energy Corp. computer print out, showing late payment charges for an account in the name of Todd G. Brace, reflects that it was printed on June 22, 2010. [Doc. #34-3, p. 9]. A "past due notice" from the Waterville Gas Company, with a due date of May 17, 2010, was also sent to Todd G. Brace at the Wheeling, West Virginia address. [Doc. #34-3, p. 10].

15-03136-jpg    Doc 39    FILED 12/13/16    ENTERED 12/13/16 16:40:31    Page 16 of 20

The existence of all of these bills, mailed to Todd Brace many months before the Perrysburg Municipal Court litigation was commenced, raises a genuine issue of material fact as to whether - as he stated in his Affidavit - Plaintiff was not aware that these bills had not been paid.

While *res judicata* protected Plaintiff's claims based upon the Municipal Court Judgment, the "other side" of that same doctrine creates an issue as to whether the failure to assert a cause of action for the utility bills in the prior litigation may preclude Plaintiff from establishing Defendant's liability for those claims under state law.

As previously stated, this court is required to apply Ohio's law of *res judicata*,[13] which has four elements: "1) a prior final, valid decision on the merits by a court of competent jurisdiction; 2) a second action involving the same parties, or their privies, as the first; 3) a second action raising claims that were or could have been litigated in the first action; and 4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997); *see also*, *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 1995 Ohio 331, 653 N.E.2d 226, 229 (Ohio 1995). If all four elements are met, claim preclusion can bar a later lawsuit for claims that could have been brought in a previous action. In this case, the previous action would be the lawsuit Plaintiff filed in the Municipal Court.

Accordingly, there is an genuine issue as to whether the alleged obligation for unpaid utilities remains a viable claim under state law. The third element requires a "second action raising claims that were or could have been litigated in the first action." The scope of claims covered by this prong is broad. *Res judicata* prevents "not only relitigati[on of] a claim previously adjudicated; it also precludes litigati[on of] a claim or defense that should have been raised, but was not, in the prior

---

[13]/ Keeping in mind that under Ohio law, the doctrine of *res judicata* encompasses both claim preclusion and issue preclusion. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381-382, 653 N.E.2d 226 (1995).

15-03136-jpg    Doc 39    FILED 12/13/16    ENTERED 12/13/16 16:40:31    Page 17 of 20

suit." *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003); *see also*, *Kline v. Mortg. Electr. Sec. Systems*, 2011 WL 1118485 at *6, 2011 U.S. Dist. LEXIS 30821 at **18-19 (S.D. Ohio Feb. 16, 2011)("under Ohio *res judicata* doctrine, the question is not what claims [a party] opted to include, but what claims he could have included in the prior state court action").

To the extent the obligations Plaintiff seeks to have held non-dischargeable are the ones asserted in the Complaint and the Motion for Summary Judgment, they are clearly part of the same "transaction or occurrence" as the damages under the lease. If, instead, the obligations were from an earlier period, there is still an issue because the parties were arguing an issue arising out of the Final Decree, and without a copy of the lease agreement in evidence, the court cannot determine the extent to which those issues arose from the lease, or directly from the Final Decree.

Because the utility claims were not raised in the Perrysburg Municipal Court action, and there are genuine issues of material fact about Plaintiff's knowledge of those claims at the time the lawsuit was commenced, *res judicata* is an additional reason that the court cannot grant Summary Judgment for Plaintiff, because the claims that Plaintiff asserts are non-dischargeable may no longer be claims that would be allowable over objection, based on state law. *See*, 11 U.S.C. §502(b)(1).

    C.    **The Transfer Of Title To 332 East Front Street.**

The Complaint seeks transfer of title from Defendant to Plaintiff pursuant to the Statement of Intentions filed under 11 U.S.C. Section 521(a)(2). In Defendant-Debtor's Statement of Intentions, she checked the box that the property would be retained, and then checked "other" for all three mortgages, stating: "Co debtor will assume full financial responsibility for the home", "co debtor to take over responsibility for the mortgage", and "co debtor will assume full financial responsibility for this debt". [Case No. 15-32754, Doc. #1, pp. 37-38].

15-03136-jpg    Doc 39    FILED 12/13/16    ENTERED 12/13/16 16:40:31    Page 18 of 20

Essentially, Plaintiff conflates the requirement that a debtor perform their statement of intentions with the requirement in the Final Decree that Defendant-Debtor quit claim her interest in the Residence (defined as the Front Street property) to Plaintiff. [Doc. #34-1, pp. 15-16].

In response, Defendant stated: "Debtor has repeatedly advised this court and opposing counsel that she is ready/willing and able to execute a quit claim deed for the benefit of the Plaintiff relative to the Riverford property. Debtor's testimony under oath has indicated she had already executed and forwarded to Plaintiff's counsel such a document at the time of the divorce without response." [Doc. #37-1, p. 8].

The parties appear to agree that there is an obligation on the part of the Debtor to transfer title to some property to the Plaintiff - however, it is not clear what property is to be transferred. Plaintiff appears to be asking for the Front Street property to be transferred. Defendant's response speaks to transferring title to the Riverford property by quit claim deed.

There is also a question as to whether or not this court has jurisdiction (notwithstanding that both Plaintiff and Defendants are in separate bankruptcies before this court) to order the transfer.

Accordingly, the court will deny Summary Judgment on the requested transfer, and address what property or properties are in issue, and the mechanism for, and timing of, any requested transfer(s) of real estate at the pre-trial scheduled below.

Accordingly, it is

**ORDERED** that Plaintiff's Motion for Summary Judgment is Granted in part as set forth in Part II(B) above, and is otherwise Denied.

It is **FURTHER ORDERED** that Defendant's Motion for Summary Judgment is Denied.

It is **FURTHER ORDERED** that this matter will be set for further pre-trial on the remaining

claims, on January 4, 2017 at 10:30 a.m., in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.

# # #

20